## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**LATHAN MITCHELL**                                                                **PLAINTIFF**

**VS.**                                **No. 3:22-cv-00286 PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
  **Social Security Administration**                              **DEFENDANT**


### ORDER

Plaintiff Lathan Mitchell ("Mitchell") appeals the final decision of the Acting Commissioner of the Social Security Administration ("Kijakazi") to deny his claim for Supplemental Security Income ("SSI"). Mitchell contends the Administrative Law Judge ("ALJ") erred in the following ways: (1) by failing to properly assess his morbid obesity and the credibility of his statements about the limitations imposed by obesity; and (2) by wrongly relying upon the opinions of the state agency doctors to support the determination of Mitchell's residual functional capacity ("RFC"). The parties ably summarized the medical records and the testimony given at the telephonic administrative hearing, which was conducted on September 30, 2021. (Tr. 35-56). The Court has carefully reviewed the record to determine whether there is substantial

1

evidence to support Kijakazi's decision.  42 U.S.C. § 405(g).  The relevant period to be considered is from September 15, 2020, Mitchell's application date, through January 12, 2022, the date the ALJ issued his decision.

*The Administrative Hearing:*

Responding to questions posed by his attorney, Mitchell stated he was 43, attended school through the tenth grade and was working toward his GED.  He was not currently working, and  lived with his fiancee in Jonesboro, Arkansas.  Mitchell indicated he had five children, one of whom was still a minor.  Mitchell reported he was 6'3" and weighed 522 pounds, having gained about 17 pounds in the months preceding the hearing.  Mitchell stated he could do basic math and was capable of reading and understanding newspaper articles despite having ADD and ADHD.  He said he was able to read and prepare a grocery list.

Mitchell stated his last full-time employment was in 2011, when he was self-employed framing houses and doing construction work.  He stated it was "impossible for [him to] work right now" due to his emphysema, asthma, back problems, and weight issues.  (Tr. 42).  Mitchell testified his medical providers had referred him to a dietician for weight issues, and his fiancee was trying to help as well.  For his breathing problems, Mitchell cited two different inhalers (Albuterol and Symbicort) which had been prescribed.  Mitchell also listed other medications he was taking:

Amlodipine, Cetirizine, Cymbalta (prescribed for his back), Gemfibrozil, Hydrochlorothiazide, Losartan, Metformin, Ozempic (once a week injection), Ventolin, and a nicotine patch (Mitchell stated he continued with the patch though he had ceased smoking).

Despite the medications, Mitchell stated his back and breathing problems persist, interfering with daily activities such as taking the trash out, taking a shower, or driving his truck. On a good day, Mitchell said he might go to the store and sit in his truck. On occasion, he might sit and ride in a motorized cart at the store. He described attempts to take out the trash, help around the house, or make dinner, but indicated his fiancee does "90% of the stuff" at home. (Tr. 47). Due to an inability to stand for a long period Mitchell stated he either sits with his feet propped up or lies down. He estimated he could sit with his feet on the floor for no more than 15-20 minutes before back pain intervened, and he could stand for "just a few minutes maybe." (Tr. 48). He stated his back would hurt if he walked in his driveway. Mitchell explained that these limited daily activities also aggravated his breathing issues.

On further questioning by the ALJ, Mitchell stated he was diagnosed with diabetes in 2020, and that his blood pressure was controlled with medication. He also described three injections he received for back pain and a plan to begin pain

management.  Mitchell utilized a cane, which was not prescribed, two to three times a week to enter and exit the shower.  Mitchell was awaiting a referral to receive treatment for depression and anxiety, and was not taking any mental health prescriptions at the time of the hearing.  Regarding his weight, Mitchell agreed that he had gone from 365 in August 2020 to 505 in July 2021.

Valerie Borja ("Borja"), a vocational expert, also testified, identifying Mitchell's past carpenter job as medium, skilled work.  The ALJ asked Borja to assume a hypothetical worker of Mitchell's age and background, with the ability to do light work with the following restrictions: only occasional stooping, crouching, climbing, or balancing; no exposure to moderate amounts of respiratory irritants such as dust, fumes, strong odors, or extreme changes in temperature or humidity; and no mental limitations.  Given those parameters, Borja stated such a hypothetical worker could not perform Mitchell's past relevant work but could perform the jobs of marker, mail clerk, and garment sorter.  Borja was then asked to assume a worker who could perform less than sedentary work, unable to stand for more than 30 minutes at a time, who could not stoop, crouch, climb, or balance, must avoid exposure to moderate amounts of irritants, could not maintain attention or concentration or meet normal attendance requirements, would need frequent rest breaks, and would be limited to simple work-related decisions.  Such a worker, according to Borja, would be

4

precluded from all work.   (Tr. 53-55).

*The ALJ's Decision:*

In his January 12, 2022 decision, the ALJ found Mitchell had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, and asthma.   The ALJ considered the impairments of diabetes, hypertension, depression, and anxiety, finding these alleged impairments were non-severe.   Noting Mitchell's testimony that he had ADHD, the ALJ observed there was no evidence to support this diagnosis, no treatment was being received, and no medications had been prescribed for ADHD.   In reaching his conclusion regarding Mitchell's mental impairments, the ALJ considered the four broad areas of functioning found in 20 C.F.R., Part 404, Subpart P, Appendix 1, finding Mitchell had no limitation in two of the four functional areas: (1) understanding, remembering or applying information; and (2) adapting or managing oneself.   The ALJ determined Mitchell had a mild limitation in the remaining two functional areas: (1) concentrating, persisting, or maintaining pace; and (2) in interacting with others.

The ALJ concluded Mitchell's impairments did not met a listed impairment, explicitly noting he considered Listings 1.15, 3.03, 12.04, and 12.06.   The ALJ determined Mitchell had the RFC to perform light work with restrictions which mirrored those posed by the ALJ to Borja in the initial hypothetical question.   In

reaching his RFC conclusion, the ALJ considered Mitchell's subjective statements, finding they were "not entirely consistent with the medical evidence and other evidence of record." (Tr. 19).

The ALJ addressed the medical evidence, summarizing treatment records from the months preceding the relevant period and during the period. The ALJ noted the medications Mitchell takes. The ALJ acknowledged Mitchell's morbid obesity, including the rapid gain of 140 pounds beginning in August 2020. This obesity, according to the ALJ, "conceivably contributes to his lower back pain." (Tr. 19). The ALJ also considered the opinions of the state agency examiners and the February 2020 medical statement from Mitchell's treating medical care provider, P.A. Lidwina Powers ("Powers") at ARCare. The ALJ observed that Powers' medical statement was silent "as to the claimant's limitations, if any" and "not very persuasive as it only provides the claimant's diagnoses and treatment regimen." (Tr. 20).

The ALJ concluded Mitchell could not perform his past relevant work as a carpenter. However, relying upon Borja's testimony, the ALJ held that Mitchell was able to perform other jobs in the national economy, such as the jobs of machine tender and surveillance monitor. Therefore, he found Mitchell not disabled. (Tr. 12-22).

*Claim One – the ALJ failed to properly assess his morbid obesity and the credibility of his statements about the limitations imposed by obesity*

The ALJ deemed morbid obesity to be a severe impairment. The medical records prior to and during the relevant period support this finding. In February of 2020, Mitchell weighed 422 when seen by Powers. (Tr. 537). In March of 2020, he weighed 441 (Tr. 531), and on April 1, he weighed 427. (Tr. 340). On April 16, 2020, Mitchell weighed 445, and in early May, Mitchell's weight was 464. (Tr. 504, 517).

On May 20, 2020, Mitchell was seen at Pain Centers of America ("PCA"), where he weighed 447. PCA referred Mitchell for physical therapy and advised him to "maintain normal activities" and "advised against bed rest." (Tr. 446). In early June, 2020, Mitchell returned to ARCare where he was seen by APRN Gothard. Mitchell weighed 473 at this visit. (Tr. 491). When he saw Gothard in early September of 2020, twelve days before the beginning of the relevant period, Mitchell weighed 485. (Tr. 471). In January and February of 2021, Powers recorded that Mitchell was still a smoker, counseled him on diet and exercise, and directed him to exercise thirty minutes daily. (Tr. 619, 624). Mitchell weighed 490 in April of 2021 and 505 in July of 2021. (Tr. 602, 611).

In reaching his RFC conclusion, the ALJ cited Mitchell's weight of 447 in May

2020 when seen at PCA, and also cited the instructions for Mitchell to maintain normal activities, avoid bed rest, and the recommendation for physical therapy. The ALJ again noted morbid obesity when discussing Mitchell's asthma, and separately addressed obesity as follows:

> The claimant is morbidly obese. He is 6'3" tall and currently weighs 505 pounds with a BMI of 45.7. His weight has increased by about 140 pounds. He tried the KETO diet, Contrave and exercise. He also inquired about a gastric bypass. His excessive weight conceivably contributes to his lower back pain.

(Tr. 19). In discussing the medical statement provided by Powers, the ALJ observed, "The statement is silent as to the claimant's limitations, if any. With the exception of his excessive weight, the overall evidence suggests his impairments are stable with his treatment." (Tr. 20). Finally, the ALJ found "[t]here is no evidence of any health care provider restricting the claimant from all work activity." (Tr. 19).

Mitchell argues the ALJ failed to properly assess his morbid obesity. The Court finds, however, that substantial evidence supports the ALJ's decision. The ALJ acknowledged Mitchell's obesity and even conceded this could "conceivably" contribute to his lower back pain. This concession was, however, not based upon objective medical evidence or opinion evidence, as no treating medical provider limited Mitchell or opined that his excessive weight in fact contributes to his back pain. It is significant that Powers, in July 2021, lists Mitchell's diagnoses and

treatments with no mention of obesity. (Tr. 593). It is likewise significant that the providers at PCA directed Mitchell in May 2020 to maintain normal activity and avoid bed rest, and that Powers directed him in early 2021 to exercise thirty minutes a day. The ALJ did not err in assessing Mitchell's morbid obesity.

In an argument which overlaps with the above discussion, Mitchell contends the ALJ erred in assessing his subjective statements about his obesity and the limitations it causes. Mitchell testified he has greatly limited abilities. The ALJ is tasked with examining this testimony, guided by SSR 16-3p, which sets forth the relevant factors:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

See SSR 16-3p. The ALJ is not required to explicitly discuss each relevant factor. See Goff v. Barnhart, 421 F.3d 785 (8th Cir. 2005).

Mitchell is correct that an ALJ is not to discount subjective complaints solely based upon the objective medical evidence. See Wises v. Astrue, 552 F.3d 728 (8th Cir. 2009). Here, however, the ALJ considered more than the objective medical

evidence in evaluating his subjective statements.  For example, the ALJ considered the absence of any physician-imposed obesity-related restrictions.  Mitchell's treating physician's assistant, Powers, had the opportunity to outline restrictions in her July 2021 medical statement but did not do so.  The ALJ also identified other factors he considered in evaluating Mitchell's credibility, including Mitchell's statement that he stopped working in February 2019 but there were no reported earning from 2015 to 2021; that Mitchell had not sought less demanding work after the alleged onset date; and Mitchell's daily activities.  In sum, the ALJ  permissibly considered appropriate factors in viewing Mitchell's subjective statements, and substantial evidence supports his conclusion.

*Claim Two – the ALJ wrongly relied upon the opinions of the state agency doctors to support the RFC determination*

The ALJ addressed the opinions of the state agency physicians:

The DDS examiners found degenerative disk disease, asthma and obesity were severe impairments.  His depression and anxiety were deemed non-severe, with only mild mental limitations.  They determined the claimant retained the ability to perform light exertional work with occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling.  He must avoid exposure to respiratory irritants and avoid climbing ladders, ropes and scaffolds. [citations omitted].  Their assessments are persuasive because they are entirely consistent with the totality of the medical evidence.

(Tr. 20).

10

The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017. Mitchell filed his claim in September 2020. The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021). The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).
>
> The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

*See Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion. Mitchell claims the ALJ failed

to engage in the proper supportability and consistency assessments, arguing the ALJ relied upon boilerplate language and failed to provide an explanation of his acceptance of the state agency opinions.

While Mitchell is correct that more analysis could have been provided, the ALJ complied with the relevant regulations and no error occurred.   With regard to supportability, this analysis is a bit different when, as here, the opinions were given by physicians who admittedly did not examine the claimant.   A physician's own treatment notes are typically a relevant ingredient in the supportability of the medical opinion.  *See, e.g., Dotson v. Saul*, No. 4:20-CV-310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021).   Another factor in the supportability determination is the explanations provided by the opining physicians.   Here, the ALJ cited to the explanations provided by the state agency physicians.[1]   The ALJ adequately explored the supportability prong of the regulatory analysis.

The consistency of an opinion is judged by comparing it to evidence from other sources.   Here, the ALJ found the opinions consistent because "they are entirely consistent with the totality of the medical evidence." (Tr. 20).  Mitchell contends that this finding is inadequate, and that more explanation is necessary.  In this instance,

---

[1] Initial examiner Dr. David Hicks detailed Mitchell's medical history, summarized roughly a dozen visits to medical providers, and considered a Function Report executed by Mitchell. (Tr. 71-73).

however, Mitchell does not point to any opinions at odds with the state agency physicians.  While brief and to the point, a statement that all of the medical evidence supports the ALJ's decision is an adequate explanation.  If opposing opinions were in the record, the Court's  consideration might be different.  There is no error in the ALJ's analysis of the consistency of these medical opinions.

In summary, substantial evidence supports the determinations reached by the ALJ.  The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion.  The test is whether substantial evidence supports the ALJ's decision.  *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Mitchell's complaint is dismissed with prejudice.

IT IS SO ORDERED this 15th day of June, 2023.

_____

UNITED STATES MAGISTRATE JUDGE